UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARTY J. FRANZKE,

        Petitioner,

v.

        Case No. 14-cv-1055-bhl

REGIONAL CHIEF, UNIT 415, APPLETON,
WISCONSIN DEPARTMENT OF CORRECTIONS,
PROBATION AND PAROLE[1],

        Respondent.

**ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS***

On August 28, 2014, Petitioner Marty J. Franzke filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2008 state-court conviction for attempted first-degree sexual assault of a child. (Dkt. No. 1.) In his petition, Franzke asserts four grounds for *habeas* relief: (1) ineffective assistance of trial counsel; (2) constitutional error in allowing the jury to view certain evidence; (3) ineffective assistance of postconviction counsel; and (4) insufficiency of the evidence used to convict him. The parties have briefed the issues and, based on the record, the Court denies Franzke's *habeas* petition, dismisses the case, and declines to grant a certificate of appealability.

**BACKGROUND**

In 2006, Franzke was charged with repeated sexual assault of his daughter "J.B." between 1998 and 2000, attempted sexual assault in 2000, and a specific sexual assault in 2006. (Dkt. No.

---

[1] Franzke has been released from prison and is now serving the extended supervision portion of his sentence. *See* https://appsdoc.wi.gov/lop/detail.do (last visited April 16, 2021). Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption has been amended to reflect the proper respondent in this action.

1

14-5 at 2.) On February 21, 2008, after a two-day trial, Franzke was convicted only of the attempted sexual assault in 2000. The primary evidence against Franzke came from J.B. She testified that in May 2000, when she was eight or nine, Franzke attempted to sexually assault her while she was staying overnight at her grandmother's house. (Dkt. No. 14-14 at 92-94.) J.B. told the jury that she had been sleeping in a spare room when Franzke got into her bed, "kind of" choked her by putting his hand over her mouth, and tried to touch her "private parts." (*Id.*) She resisted by kicking and telling Franzke that she had to use the bathroom. (*Id.*)

Franzke's defense was that the attempted assault never happened, and that J.B. had made up the allegations out of anger or spite. (Dkt. No. 14-17 at 37-38.) In addition to other evidence, he introduced reports from the Winnebago Department of Human Services (the DHS Reports) that described J.B. as reporting that Franzke had come home drunk and choked her. The DHS Reports do not include any suggestion from J.B. that Franzke had tried to sexually assault her in connection with the May 2000 incident. (Dkt. No. 14-15 at 43-44; Dkt. No. 14-8 at 44-63.)

After the jury found him guilty of attempted first-degree sexual assault of a child, the circuit court sentenced Franzke to a prison term of twelve years confinement to be followed by eight years of extended supervision. (Dkt. No. 14-1 at 1.) Franzke filed a postconviction motion asserting ineffective assistance of trial counsel, which the circuit court denied on May 14, 2009, following a hearing on the motion. (Dkt. No. 14-17.) Franzke then appealed, arguing (1) insufficiency of the evidence; (2) ineffective assistance of trial counsel; (3) improper closing argument; and (4) that the interests of justice required a new trial. (Dkt. No. 14-2.) The Wisconsin Court of Appeals affirmed the circuit court's judgment on December 7, 2010. (Dkt. No. 14-5.) Franzke petitioned for review in the Wisconsin Supreme Court, which was denied on March 15, 2011. (Dkt. No. 14-6, 14-7.)

2

On October 14, 2011, Franzke moved for a new trial in the circuit court, asserting ineffective assistance of appellate counsel. (*See* Dkt. No. 14-18.) Following a hearing, the circuit court denied the motion on May 4, 2012. (*Id.*) Franzke filed a second appeal, this time arguing ineffective assistance of appellate counsel as a way of "avoid[ing] the prohibition against successive postconviction motions." (Dkt. Nos. 14-11 at 2, 14-8.) On October 22, 2013, the appellate court affirmed the circuit court's denial of Franzke's motion for a new trial. (Dkt. No. 14-11.) Franzke petitioned for review, but the Wisconsin Supreme Court denied review on April 16, 2014. (Dkt. Nos. 14-12, 14-13.) This federal *habeas* petition followed.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014) (quoting 28 U.S.C. §2254(d)(1), (2)). A federal *habeas* court reviews "the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citation omitted).

"The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

3

"If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "Section 2254(d) reflects the view that *habeas corpus* is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

## ANALYSIS

### I. The Wisconsin Court of Appeals Did Not Err in Rejecting Franzke's Ineffective Assistance of Trial Counsel Claims.

Franzke's first *habeas* claim is that his trial counsel was constitutionally ineffective in: (1) failing to request jury instructions on the defense theories of mistake and voluntary intoxication; (2) suggesting that the DHS Reports resulted from "interventions"; and (3) failing to seek a mistrial after learning that the circuit court had provided the jury with copies of the DHS Reports while Franzke and trial counsel were absent.

"Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, [the petitioner] must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in prejudice." *United States v. Berg*, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "The performance prong of *Strickland* requires a [petitioner] to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). To establish prejudice under *Strickland*, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694 (1984)).

In the *habeas* context, "[e]stablishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105

4

Case 1:14-cv-01055-BHL   Filed 04/23/21   Page 4 of 17   Document 27

(2011). This is because the *Strickland* and §2254(d) standards are both "highly deferential," so when the two apply in tandem, federal-court review is "doubly deferential." *Id.*; *Cullen v Pinholster*, 563 U.S. 170, 190 (2011). Accordingly, the question before this Court "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. With this standard in mind, the Court will address each of Franzke's arguments.

**A. The Wisconsin Court of Appeals Did Not Err in Concluding Trial Counsel Was Not Ineffective in Failing to Request Additional Jury Instructions.**

Franzke argues that his trial counsel was constitutionally ineffective because he failed to request jury instructions on the potential defenses of mistake and voluntary intoxication. According to Franzke, his jury could have concluded, based on the evidence presented, that he was too intoxicated to form the intent necessary to attempt a sexual assault on his daughter. (Dkt. No. 2 at 2-3.) He insists that his trial counsel erred when he failed to suggest jury instructions concerning the impact of intoxication on his intent.

Trial counsel's handling of the jury instructions was the subject of a postconviction motion and hearing in the circuit court. At that hearing, trial counsel testified that he contemplated requesting instructions for intoxication and discussed possible defenses with Franzke but ultimately declined to suggest those instructions because arguing those defenses would have undercut his primary defense—that the attempted assault never happened. (Dkt. No. 14-17 at 27-29.) Trial counsel confirmed that the theory of the defense was two pronged: (1) the attempted assault did not happen and (2) J.B. made up the accusations out of spite or anger toward Franzke. (Dkt. No. 14-17 at 37). The introduction of mistake and intoxication defenses would have been inconsistent with those primary defenses. Trial counsel conceded that, under certain

5

circumstances, it could be sound strategy for the defense to present inconsistent defenses, but he did not believe those circumstances were present in this case. (*Id.*)

Applying *Strickland*, the Wisconsin Court of Appeals rejected Franzke's challenge to his trial counsel's strategic decision not to request these instructions, concluding that trial counsel's "decision constituted reasonable trial strategy." (Dkt. No. 14-5 at 6 (citing *Strickland*, 466 U.S. at 690-91).) The Court of Appeals noted that "[t]elling the jury none of the incidents occurred, but if one of them did, it was a mistake caused by his intoxication would create a risk that the jury would view the alternative defense as a concession and would convict him of one or more of the other offenses." (Dkt. No. 14-5 at 6.)

Franzke's *habeas* challenge on this ground fails because the Court of Appeals' conclusion was based on a reasonable application of *Strickland*. Strategic choices made with a full understanding of the facts and law are not subject to second-guessing on appeal, let alone on *habeas*. The record shows that trial counsel exercised judgment in his decision not to request certain instructions. He explained that he knew he could present inconsistent defenses but that he chose not to do so given the circumstances and facts of this case. The state court's analysis of this issue was correct and did not involve an unreasonable application of the law or an unreasonable determination of the facts.

Franzke highlights that trial counsel's strategy did not work and thus argues the strategy cannot be considered "sound." But "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation[.]" *Harrington*, 562 U.S. at 109 ("the prosecution's response shows merely that the defense strategy did not work out as well as counsel had hoped, not that counsel was incompetent"). Because the Court of Appeals reasonably applied *Strickland* when evaluating trial

6

counsel's decision not to request certain jury instructions, Franzke is not entitled to relief on this basis.

### B. The Wisconsin Court of Appeals Did Not Err in Denying Franzke's Ineffective Assistance Claim Related to the DHS Reports.

Franzke's next ineffective assistance of counsel argument relates to the DHS Reports. First, he argues that trial counsel was constitutionally ineffective when he referred to the DHS Reports as an "intervention," which Franzke contends, "ma[de] it sound like these reports [were] a result of a thorough investigation by Human Services," even though they were not. (Dkt. No. 16 at 18.) Second, Franzke argues that trial counsel should have objected to the circuit court's decision to provide the DHS Reports to the jury without first consulting with trial counsel or Franzke. (*Id.* at 20.)

At trial, the defense succeeded in admitting three DHS Reports into evidence and, during deliberations, the circuit court acceded to the jury's request for copies of all three reports. The first report included a statement from J.B.'s mother that Franzke "took [J.B.] by the throat, pushed her against the head board and held her there by her throat." (Dkt. No. 14-8 at 45.) The report noted that J.B. was able to get away and run to her grandmother. (*Id.*) The report also indicated that Franzke "recently tried to commit suicide" and had a drinking problem. (Dkt. No. 14-8 at 46.) The second report also described the choking incident and included additional information that Franzke did not know what had happened that night because he was so intoxicated and that he had checked himself into alcohol treatment the day after he learned of J.B.'s claims. (Dkt. 14-8 at 49.) The third report included statements from a counselor at J.B.'s school who called to follow up on the initial report. (Dkt. No. 14-8 at 53.) A note in the report indicated that J.B. wanted to start seeing Franzke again, but she was "very afraid after the incident." (*Id.*) None of the reports included statements from J.B. that Franzke had tried to touch her sexually.

7

### 1. Trial Counsel's Strategy to Refer to the DHS Reports as an Intervention Was Reasonable under *Strickland*.

Notwithstanding Franzke's complaints, the record shows only limited references to the DHS Reports as "interventions" during his trial. Trial counsel referred to the DHS Reports as an "intervention" once in his opening statement, when he said:

> And the evidence is going to show that nowhere was it reported to human services or to her mother or to her grandmother or to anyone that she was ever touched in an inappropriate way despite this intervention, despite her telling them that she's afraid of her father.

(Dkt. No. 14-14 at 78.) The trial transcripts also show that trial counsel later referred to "a social worker who[] intervened" during a cross-examination. (Dkt. No. 14-15 at 46.) With the exception of these two occasions, trial counsel did not otherwise characterize the reports as an intervention, and the DHS Reports do not identify themselves as an "intervention" or "investigation."

The state courts rejected Franzke's ineffective assistance argument based on this "intervention" theory. The Wisconsin Court of Appeals concluded that this argument failed both prongs of the *Strickland* standard because trial counsel's decision to characterize the DHS Reports as the product of an intervention or investigation was strategic and, even if the characterization was not accurate, Franzke was not prejudiced by the mischaracterization. (Dkt. No. 14-11 at 4-5.) It reasoned that because "intervention" suggested a more thorough investigation than what actually occurred, "[t]he absence of any mention of a sexual component to the attack following a thorough investigation would be more exculpatory than the absence of an accusation of sexual assault in a cursory report." (*Id.* at 5.) The Court of Appeals found that trial counsel made a reasonable strategic decision in deciding how to characterize the DHS Reports and that decision could not be second-guessed on appeal. (*Id.*)

8

The Court of Appeals' decision is a reasonable application of *Strickland*. It rationally concluded that trial counsel's characterization of the DHS Reports as the product of an intervention or investigation was a strategic decision intended to benefit Franzke. Franzke is convinced that, because of this mischaracterization, the jury inferred that J.B. must have been telling the truth about the May 2000 incident, but he ignores that nowhere in the reports is there a suggestion that, in addition to choking her, Franzke attempted to sexually assault her. Based on this missing allegation, trial counsel asked the jury to infer that no attempted sexual assault occurred because J.B. never hinted at one despite having multiple opportunities to do so. (Dkt. No. 14-16 at 132 ("[T]here was every opportunity—and we would expect if there was something inappropriate going on in a sexual matter that this would have been brought out because she's saved, she's protected[.]").) That the jury did not draw trial counsel's desired inference does not mean that he was incompetent for trying to lay the groundwork for it to do so. Given that the Wisconsin Court of Appeals' application of *Strickland* to trial counsel's strategy regarding the DHS Reports was not unreasonable, Franzke is not entitled to relief on this basis.

### 2. Trial Counsel's Decision Not to Challenge the Submission of the DHS Reports to the Jury Was Reasonable under *Strickland*.

Nor is Franzke entitled to *habeas* relief on grounds that trial counsel was ineffective in failing to request a mistrial after learning that the circuit court had given the DHS Reports to the jury. After deliberations began, the jury requested copies of the DHS Reports. (Dkt. No. 14-16 at 145.) Trial counsel and Franzke were not present, so the circuit court contacted trial counsel by phone. (*Id.* at 146.) Trial counsel did not promptly return to the courtroom, so the circuit court provided the jury with the DHS Reports (exhibits 5 and 6). (*Id.*) After trial counsel and Franzke returned to the courtroom, the judge informed them of how he handled the jury's request. Trial

9

counsel stated that he agreed "with providing the jury with a copy of the social services report, Exhibits 5 and 6." (Dkt. No. 14-16 at 148.)

Franzke asserts that trial counsel should have moved for a mistrial as soon as he learned that the circuit court had presented the jury with the DHS Reports without trial counsel's input. (Dkt. No. 16 at 19-20.) He focuses on a reference in one of the reports that he had recently tried to commit suicide. (*Id.*) According to Franzke, trial counsel could have (or should have) attempted to excise mention of the suicide attempt from the reports before they were presented to the jury. (Dkt. No. 16 at 20.) He explains that the alleged suicide attempt occurred a few months before the attempted sexual abuse allegations and argues that the jury would have incorrectly concluded that the attempted suicide showed consciousness of guilt for attempting to sexually abuse his daughter. (*Id.*; Dkt. No. 14-11 at 4.)

The Court of Appeals held that trial counsel's failure "to make an issue of his and Franzke's absence from the courtroom when the circuit court decided to grant the jury's request" did not prejudice Franzke because trial counsel would not have objected to providing the DHS Reports to the jury had he been there. (Dkt. No. 14-11 at 4.) The Court of Appeals also concluded that trial counsel's failure to ask for the suicide reference to be excised did not prejudice Franzke because the suicide attempt may have shown consciousness of guilt for choking his daughter (which Franzke does not deny) rather than consciousness of guilt for attempting to sexually assault her. (*Id.*) The Court of Appeals also noted that the suicide attempt could have reduced the prejudicial effect of the choking incident because it showed that Franzke had remorse for choking his daughter. (*Id.*)

The Court of Appeals' application of *Strickland* was reasonable. After returning to the courtroom, trial counsel expressed his agreement with providing the DHS Reports to the jury. That

10

decision was consistent with trial counsel's reliance on the DHS Reports as part of the defense's strategy to deny that an attempted sexual assault had occurred. Trial counsel repeatedly impressed upon the jury that the DHS Reports included no mention of an attempted sexual assault and even indicated that J.B. began wanting to see Franzke shortly after the incident. Given trial counsel's reliance on the reports, the Court of Appeals reasonably concluded that trial counsel made a strategic decision in agreeing that the jury should have the reports.

With regard to the suicide reference, there is no evidence that the jury even saw this comment or relied on it. Neither the prosecution nor the defense mentioned the comment during testimony, their opening statements, or their closing arguments. Nor did the prosecutor or the judge mention the comment when the judge sent the exhibits back to the jury. Franzke submitted a letter memorializing an interview with one of the jurors, and she did not mention his attempted suicide as a basis for the jury's decision. (Dkt. No. 16-1 at 21-22.) As such, Franzke provides no evidence that the suicide comment was even seen—much less considered—by the jury, severely undercutting his assumption that he was prejudiced by that statement's inclusion.

In any event, even if the jury saw the comment about the attempted suicide, the Court of Appeals reasonably concluded that the statement's inclusion did not prejudice Franzke. As pointed out, Franzke's suicide attempt is consistent with a consciousness of guilt over choking one's child and does not necessarily suggest a consciousness of guilt for attempted sexual assault. (*See* Dkt. No. 14-11 at 4.) Because the Court of Appeals reasonably applied *Strickland* when considering whether Franzke was prejudiced by trial counsel's decisions with regard to the DHS Reports, Franzke is not entitled to relief on this basis.

## II. The Wisconsin Court of Appeals Did Not Err in Concluding that Franzke Was Not Prejudiced by the Circuit Court's Submission of the DHS Reports to the Jury.

Franzke's second *habeas* claim covers much of the same ground as his ineffective assistance of counsel claim. Franzke argues he is entitled to relief based on the circuit court's decision to send the DHS Reports to the jury without Franzke or trial counsel being present. (Dkt. No. 16 at 20-23.) The Court of Appeals held that Franzke's challenge to this decision failed for two reasons. First, the issue was not properly preserved at trial because, when given the opportunity to raise the issue, trial counsel stated his agreement with the circuit court's decision to allow the jury to see the documents. And second, any error was harmless beyond a reasonable doubt. (Dkt. No. 14-11 at 3-4.)

Various circumstances may bar a federal court from reviewing the merits of a petitioner's claim. Relevant here, "a federal court may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citations omitted). "A state law ground that provides the basis for a state court decision is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Id.* (citations omitted). Here, the Court of Appeals relied on the doctrine of waiver as a basis for dismissing Franzke's claim. It highlighted that trial counsel agreed with the circuit court's decision to provide the reports to the jury; thus, waiving any argument that the circuit court erred in doing so. (Dkt. No. 14-11 at 3.)

*State v. Huebner* sets forth Wisconsin's waiver doctrine and holds that "[i]ssues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." 235 Wis. 2d 486, 492 (2000). Given that the doctrine of waiver is firmly established and regularly followed in Wisconsin, *see Promotor v. Pollard*, 628 F.3d 878, 886-87

(7th Cir. 2010), the Court finds that the appellate court reasonably concluded that Franzke procedurally defaulted this claim.

Under *Coleman v. Thompson*, the Court can consider the merits of the procedurally defaulted claim only if Franzke "can show cause for the default and prejudice attributable thereto." 501 U.S. 722, 749-50 (1991). But, for the reasons explained by the Court of Appeals when it addressed Franzke's ineffective assistance of counsel claim related to this issue, Franzke fails to make such a showing. In short, trial counsel made a strategic decision not to object to the circuit court allowing the jury to review the DHS Reports. The mere fact that trial counsel's strategy was unsuccessful is not cause to excuse Franzke's failure to preserve this issue in the circuit court.

Moreover, even if the Court were to excuse Franzke's procedural default and consider the merits of his claim, the record shows the Court of Appeals reasonably concluded (alternatively) that any error by the circuit court in sending the DHS Reports to the jury without first consulting with Franzke and trial counsel was harmless. Trial counsel agreed with the circuit court's decision to provide the documents to the jury because, as the Court of Appeals noted, "[t]he exhibits were a vital part of Franzke's defense." (Dkt. No. 14-11 at 3-4.) Trial counsel relied repeatedly on the reports to show that J.B. reported only an assault, not a sexual assault, and that she indicated wanting to see Franzke again only weeks after the event. Further, when the circuit court sent the reports to the jury, he did not give the jury any instructions on how to evaluate the reports or on how to deliberate. As such, the Wisconsin Court of Appeals reasonably concluded that any error that the circuit court may have made in providing the DHS Reports to the jury before consulting with Franzke and trial counsel was harmless.

### III. The Wisconsin Court of Appeals Did Not Err in Rejecting Franzke's Ineffective Assistance of Appellate Counsel Claims.

Franzke's third *habeas* argument is that his postconviction/appellate counsel was ineffective for failing to raise the aforementioned issues relating to the DHS Reports in a postconviction motion and in Franzke's direct appeal. (Dkt. No. 1 at 10.) The Court need not wade too far into this argument because it has already concluded that the Court of Appeals acted reasonably in rejecting Franzke's claims regarding the DHS Reports as meritless. Because "[a]n attorney is not ineffective for failing to raise a meritless argument[,]" *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018), Franzke is not entitled to relief under §2254(d) based on his assertion that appellate counsel should have raised these issues.

### IV. The Wisconsin Court of Appeals Did Not Err in Concluding that the Evidence Was Sufficient to Support Franzke's Conviction for Attempted First-Degree Sexual Assault of a Child.

Franzke's fourth and final ground for *habeas* relief is premised on his contention that the Court of Appeals erred when it held that the evidence was sufficient to support a guilty verdict on the charge of attempted first-degree sexual assault of a child.[2] "The applicable Supreme Court precedent regarding sufficiency of the evidence is well-established: 'whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Saxon v. Lashbrook*, 873 F.3d 982, 987-88 (7th Cir. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*)). *Habeas* reviews of such claims include two levels of judicial inference: "first, the state

---

[2] Under Wis. Stat. §948.02(1)(e), a person commits first-degree sexual assault of a child when he "has sexual contact…with a person who has not attained the age of 13 years." The "attempt" modifier, Wis. Stat. §939.32(3), requires "that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

14

appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Id.* (citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)). Finally, and particularly relevant to Franzke's claim, when reviewing claims of insufficient evidence, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

In rejecting Franzke's challenge to the sufficiency of the evidence, the Wisconsin Court of Appeals first correctly set forth the standard and then concluded that "[t]he jury had the right to believe [J.B.'s] testimony that Franzke attempted to sexually abuse her and would have completed the crime but for her resistance, kicking and eventually seeking her grandmother's protection." (Dkt. No. 14-5 at 5-6.) It held that J.B.'s testimony "was not incredible as a matter of law" and that "[t]he jury was free to piece together the bits of testimony it found credible to construct a chronicle of the circumstances surrounding the offense." (*Id.* (citing *State v. Sarabia*, 118 Wis. 2d 655, 663-64 (1984).) The appellate court also deferred to the jury's judgment regarding Franzke's intent in rejecting evidence about his level of intoxication and his claim that he may have mistaken J.B. for his wife. *Id.*

Franzke argues that the appellate court's decision was unreasonable. He highlights that the jury did not find J.B. to be credible with regard to the other two counts of sexual abuse and questions why J.B.'s "testimony as it related to count 3 [was] more credible?" (Dkt. No. 16 at 26.) Franzke also contends that the jury could not reasonably have found that he acted "unequivocally"—an element of attempt—because the jury had several other reasonable inferences that it could have drawn regarding his intent. (*Id.* at 27-28.) He suggests that the

15

evidence demonstrated that he was too intoxicated to know what he was doing or that he may have mistakenly thought J.B. was his wife. (*Id.* at 28.)

The Court of Appeals acted consistent with federal law in viewing J.B.'s testimony in a light most favorable to the prosecution and declined to substitute its assessment of J.B.'s credibility in place of the jury's assessment. Franzke's argument that the jury was required to believe all of J.B.'s testimony or none of it is without merit. As the Court of Appeals noted, the jury was free to determine what parts of her testimony it found credible and what parts it did not. Deciding the credibility of a witness is the jury's function, and what the jury did or did not believe is generally beyond the scope of the Court's review.

The appellate court also reasonably rejected Franzke's argument that no jury could have concluded that he acted "unequivocally" because there were other inferences that the jury could have drawn regarding his intent. Contrary to Franzke's suggestion, the defense provided little evidence about the extent of Franzke's intoxication during the assault. The only testimony about Franzke's level of intoxication on that night was from an officer recalling that Franzke had said he could not remember the incident because he had been too intoxicated. (Dkt. No. 14-15 at 24-25.) A similar statement was included in the DHS Reports. Other references to Franzke's alcohol use spoke only to a generalized drinking problem. As to Franzke's argument that the jury could have inferred he made a mistake, the evidence was even more sparse. The only testimony about a mistake was from an officer who noted that Franzke had said, if it happened, he "must have mistaken [J.B.] for [his wife] because apparently he called her [his wife's name]." (Dkt. No. 14-15 at 25.) These isolated bits of testimony do not persuade the Court that it was unreasonable for the Court of Appeals to conclude that a rational trier of fact could have concluded that Franzke's intent was "unequivocal."

16

In light of J.B.'s testimony about what she recalls happening during the May 2000 incident, the Court cannot conclude that the Court of Appeals made an unreasonable determination in finding that sufficient evidence supported Franzke's conviction. Accordingly, Franzke is not entitled to *habeas* relief on this basis.

### Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court declines to issue a certificate of appealability because no reasonable jurist could debate that Franzke has not stated a ground for *habeas* relief under 28 U.S.C. §2254.

### CONCLUSION

The Court **DENIES** the petition for writ of *habeas corpus*, Dkt. No. 1.

The Court **DENIES TO ISSUE** a certificate of appealability.

The Court **ORDERS** that this case is **DISMISSED** and will enter judgment accordingly.

SO ORDERED on April 23, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge